UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 04-305-KSF

RONALD R. COBB                                                                                              PLAINTIFF

V.                                      **OPINION & ORDER**

CONTRACT TRANSPORT, INC.                                                                      DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

At the pretrial conference, the plaintiff suggested that there were a number of outstanding issues that it might be helpful to brief prior to the January 29th trial of this issue. To that end, the plaintiff has filed a motion styled "Plaintiff's Proposal Concerning the Seven Issues of Fact Discussed at His Hearing" [DE #45], which he asserts should be treated as one for summary judgment.

The plaintiff asserts that all of the elements of his FMLA claim have either been admitted by the defendant, are law of the case, or are uncontested. Therefore, it would be a waste of time to have a jury hear all the evidence and then have the Court direct a verdict on these matters. The plaintiff contends that the only issue to be decided by a jury is damages. The defendant responds that a jury trial is required on three of the elements.

I.      **ENTITLEMENT/INTERFERENCE CLAIM**

Pursuant to the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). In order to prevail on his interference claim, the plaintiff must prove that

(1) he is an "eligible employee" under the FMLA; (2) the defendant is an "employer" under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the defendant notice of his intention to take leave; and (5) the defendant denied the plaintiff FMLA benefits to which he was entitled. Cavin v. Honda of Am. Mfg., 346 F.3d 713, 719 (6th Cir. 2003). However, the FMLA excludes from coverage employees who are employed at worksites where the "total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii). This exclusion is sometimes referred to as the "employee-numerosity requirement."

There is apparently no dispute that the defendant suffered from a serious health condition. However, the defendant asserts there are still a number of matters in dispute.

    A.    **Plaintiff's Eligibility Under the FMLA**

        1.    *The Parties' Arguments*

The plaintiff asserts that the Sixth Circuit's opinion is the law of the case on this element and, therefore, it is not necessary to submit proof on this issue. Specifically, he argues that the Sixth Circuit held not only that the defendant was a successor in interest to Byrd Trucking, but also that the defendant employs sufficient employees such that he is an "eligible employee" under the FMLA.

The defendant responds that the Sixth Circuit only held that it was a successor in interest to Byrd Trucking and that it further held that the employee-numerosity requirement is not a jurisdictional issue, but did not hold that the employee-numerosity requirement was met in this particular case. Thus, the defendant asserts, this is a matter for the jury. The defendant further

argues that this issue has never been conceded and was never fully developed in the record on summary judgment and, thus, is still in dispute.

### 2. Discussion

This Court's original summary judgment opinion dealt only with the question of whether the defendant was a "successor in interest" to the plaintiff's prior employer, Byrd Trucking. The Sixth Circuit opinion addressed that question, reaching the opposite conclusion. Regarding employee numerosity, despite the fact that this Court did not address the issue, the Sixth Circuit also addressed in its opinion the question of whether the plaintiff was employed at a worksite with less than 50 employees.[1] The Sixth Circuit found that Des Moines, Iowa, where defendant's dispatcher was located, was the plaintiff's worksite because the plaintiff received his work assignments from and reported to Des Moines. In so holding, the court rejected the defendant's argument that the worksite was Mount Sterling, Kentucky, where plaintiff picked up his trucks at a public truck stop.

Under the FMLA, the term "eligible employee" does not include "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii). The defendant now argues that the Sixth Circuit ended its analysis with its finding that the plaintiff's worksite was Des Moines; the plaintiff

---

[1] The Sixth Circuit also held that subject matter jurisdiction does not turn on the question of whether the defendant is an "employer" within the meaning of the FMLA. In so holding, the court essentially overturned Douglas v. E.G. Baldwin & Assocs., 150 F.3d 604 (6th Cir. 1998), asserting that the United States Supreme Court's decision in Arbaugh v. Y & H Corp., 126 S. Ct. 1235 (2006), rendered Douglas non-binding. Thus, the Sixth Circuit rejected the defendant's argument that this court lacked subject matter jurisdiction over plaintiff's claims because the defendant was not an "employer" within the meaning of FMLA.

suggests that the Sixth Circuit intended to go beyond that finding and further hold that the plaintiff was not excluded from FMLA coverage due to the employee-numerosity requirement.

It appears to the Court that the determination that the plaintiff is an "eligible employee" under the FMLA requires two separate and independent findings in this case: (1) that the plaintiff's worksite is Des Moines, Iowa; and (2) that the total number of employees employed by the defendant within 75 miles of the Des Moines worksite is at least 50. The Sixth Circuit opinion clearly makes a finding regarding the former, but the Court was unable to find any evidence either in the record or in the Sixth Circuit opinion setting forth the latter. For example, there is no evidence of (1) the number of employees located within 75 miles of the Des Moines, Iowa, worksite; (2) the number of employees that receive assignments from and report to the Des Moines worksite; or (3) the total number of employees of the company as a whole. In the plaintiff's response to the defendant's motion for summary judgment, the plaintiff stated that the defendant has had 500 drivers employed in the last three to four years and, therefore, is a covered employer. The plaintiff cited to the deposition transcript of Jean Nible's ("Ms. Nible"), one of the owners of the defendant company, in support, but that portion of the deposition is not attached to the motion and the full transcript is not in the record, so this statement is not supported by any underlying evidence. Further, there is no information regarding whether all or, if not all, how many of these 500 drivers receive assignments from and report to the Des Moines worksite. Thus, even though this is obviously an issue that the plaintiff could easily prove, the record as it now stands does not support the entry of summary judgment on this question.

There is support for both the plaintiff's and the defendant's position in the Sixth Circuit opinion, as the opinion is ambiguous. For example, in the introduction to the opinion, the court

states, "For the following reasons, we hold that Plaintiff is an 'eligible employee' within the meaning of the FMLA[.]" Cobb v. Contract Transport, Inc., 452 F.3d 543, 546 (6th Cir. 2006). This suggests that the opinion intended to analyze both the worksite issue and the employee-numerosity issue. Thus, there are portions of the Sixth Circuit opinion that support the plaintiff's argument and suggest that the issue of whether the exclusion applies has already been determined and cannot be revisited by the jury in this case. However, as noted above, there is no finding or evidence in the record that the defendant employs more than 50 employees or that more than 50 employees report to or receive assignments from the Des Moines worksite.

There is also support in the opinion for the defendant's position that the employee-numerosity requirement should be submitted to the jury.

- For example, the court stated, "We find that Plaintiff's worksite is located in Des Moines because Plaintiff received his work assignments from Des Moines and reported to Des Moines." Id. at 558. This suggests that the only issue decided was which location was considered to be the plaintiff's worksite.

- At the end of that same section, the court seemed to narrow its focus: "Designating Des Moines as Plaintiff's worksite would extend coverage of the FMLA not just to Plaintiff but to all truck drivers receiving assignment from Des Moines dispatchers." Id. at 559. However, it never says how many truck drivers that involves. This suggests that the sole issue decided was worksite location.

- In the "Conclusion" section, the holdings are spelled out narrowly: "For the foregoing reasons, we hold that Defendant is a successor in interest to Byrd Trucking within the meaning of the FMLA and that Plaintiff's worksite is in Des Moines, Iowa." Id. at 559-60.

All of this suggests that the Sixth Circuit was only interested in half of the exclusion: the worksite location, and not the employee-numerosity requirement.

The Court finds that the employee-numerosity requirement is an issue that the plaintiff must submit and prove to a jury. The Court is unclear how the Sixth Circuit could make this

factual finding in the first instance on appeal when it was never presented or decided here first. Further, while there are broad statements suggesting that the "eligible employee" determination was made, there are narrower, more specific statements in the opinion that clarify that the Sixth Circuit only intended to make a finding regarding worksite and not the employee-numerosity requirement. Therefore, to the extent that the plaintiff has moved for summary judgment on this issue, it must be denied at this time.

Of course, this issue could easily be resolved if the plaintiff would simply provide proof that at least 50 truck drivers get their assignments from the Des Moines dispatchers. To that end, the plaintiff is encouraged to submit a request for admission to the defendant or file other evidence of the employee-numerosity requirement in the record. Any request for admission must be tendered to the defendant no later than Tuesday, January 25, 2007, and the defendant must respond no later than Friday, January 27, 2007. If the plaintiff prefers to file other proof in the record, such as an affidavit or complete deposition transcript, he must do so no later than Wednesday, January 26, 2007.

    **B.**    **Adequacy of Plaintiff's Notice**

        *1.*    *The Parties' Arguments*

The plaintiff concedes that he did not comply with the defendant's internal procedures for reporting his surgery and requesting the attendant leave that would be required. However, he argues that there is no dispute that he called his dispatcher the moment he learned he would need surgery – Friday, December 19th – and told the dispatcher he would be having surgery the following Monday, December 22nd. Further, Ms. Nible admitted that as of December 22nd, she

had actual knowledge of the plaintiff's surgery and decided within the next few days to terminate his employment anyway. Thus, he argues, there is no question about this element.

The defendant responds that it is undisputed that the plaintiff had a conversation with a dispatcher on December 19th, but the defendant disputes whether the information given to the dispatcher provided the defendant with adequate notice of the plaintiff's intent to take leave for an FMLA-qualifying injury. Aside from the fact that the plaintiff failed to follow the applicable internal policies, the defendant asserts that the dispatcher specifically told the plaintiff that he needed to contact Ms. Nible or Sandy Bergman ("Ms. Bergman") with Human Resources concerning any potential leave, which he failed to do. While an individual cannot be terminated for simply failing to comply with internal company policies, failure to comply with those policies can serve as evidence that notice was insufficient under the statute. Based on the facts, a reasonable juror could conclude that the plaintiff had not given sufficient information to the defendant to lead the defendant to believe that the plaintiff was requesting any leave. Failure to call the appropriate personnel would indicate the plaintiff was not requesting any leave.

      2.      *Discussion*

Adequacy of notice presents a mixed question of fact and law. "Although it is within the province of the jury to determine the facts of the notice given, it is for the court to determine whether those facts are sufficient reasonably [sic] to give an employer notice as required by the FMLA." Cavin, 346 F.3d at 723. Thus, the questions of whether any notice was given and, if so, what the notice consisted of and when it was given, are questions of fact. The question of whether the notice satisfied the statutory requirement is one of law.

In the present case, the defendant apparently does not dispute the plaintiff's allegation that he called his dispatcher and said he could not come to work because he was having gallbladder surgery and needed someone to cover his route.  Had the defendant raised an issue regarding the content of the notice (e.g., such as whether the plaintiff mentioned his surgery to the dispatcher or just said he was having a medical procedure, whether he mentioned how long he needed to be off work, etc.), there would be an initial issue for the jury to decide.  However, the defendant responds that it only disputes "[w]hether the information given to the dispatcher was sufficient notice . . . ."  Under the authority cited above, this is a question of law for the Court to decide.

When the need for FMLA leave is unforeseeable, as in the present case, the applicable regulation states the following:

> **§ 825.303  What are the requirements for an employee to furnish notice to an employer where the need for FMLA leave is not foreseeable?**
>
> (a)  When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case.  It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible.  In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.
>
> (b)  The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means.  Notice may be given by the employee's spokesperson (e.g., spouse, adult family member or other responsible party) if the employee is unable to do so personally.  The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.  The employer will be expected to

>obtain any additional required information through informal means. The employee or spokesperson will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

29 C.F.R. § 825.303. The defendant's internal procedures require that an employee seeking leave speak with either the co-owner, Ms. Nible, or Ms. Bergman in the Human Resources Department, if he is seeking leave for any extended period of time.

There is no dispute in the present case that the plaintiff did not comply with the defendant's internal policy for requesting and receiving FMLA leave. However, the Sixth Circuit has held that "the FMLA does not permit an employer to limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA." Cavin v. Honda of Am. Mfg., 346 F.3d 713, 720 (6th Cir. 3002) (rejecting Honda's argument of inadequate notice because the plaintiff did not contact the Leave Coordination Department within the time specified). Thus, "employers cannot deny FMLA leave on grounds that an employee failed to comply with internal procedures – as long as 'the employee gives timely verbal or other notice.'" Id. at 722 (quoting 29 C.F.R. § 825.302(d), which applies to foreseeable leave). Therefore, this Court must focus on whether, by calling his dispatcher on December 19th and telling him or her that he would be having gallbladder surgery on Monday, the plaintiff provided his employer with sufficient notice that he was invoking the protection of the FMLA.

The Sixth Circuit has stated the following regarding the content of the noticed provided by an employee:

> "[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Props., Inc.,* 149 F.3d 517, 523 (6th Cir. 1998). However, "[a]n employee does not have to expressly assert his right to take leave as a right under the FMLA." *Hammon v. DHL Airways, Inc.,* 165 F.3d 441, 450 (6th Cir. 1999); *see* 29 C.F.R. §§ 825.302(c), 825.303(b). Because an employee need not expressly invoke the FMLA, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm,* 149 F.3d at 523 (quotation omitted). "[A]n employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred." *Hammon,* 165 F.3d at 451. We agree with the Fifth Circuit that it would be inappropriate to articulate categorical rules governing the content of notices, instead recognizing that "[w]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case." *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 764 (5th Cir. 1995).

Cavin, 346 F.3d at 723-24; see also Walton v. Ford Motor Co., 424 F.3d 481, 486 (6th Cir. 2005) (reiterating same). Almost all of the cases involving notice discuss the *content* of the notice, but only a few discuss *to whom* the notice must be given. Cavin is one case in the Sixth Circuit that addresses this question. Honda, the defendant in Cavin, had a policy which permitted employees to call security to report one-day absences, but for any absence continuing beyond one day, employees were to call the Leave Coordination Department. After Cavin sustained injuries in a motorcycle accident, he called Honda's security department and told them he had been in a motorcycle accident, had been hospitalized, and would be off of work for that day. He assumed that that information would be communicated to his coordinator. Cavin continued to call security on a daily basis to report his absence and was ultimately off of work for two weeks (the second of which included a plant shutdown). He first notified the Leave Coordination Department of his need for a leave of absence when he returned to work.

The Sixth Circuit concluded that Cavin was not obligated to comply with Honda's requirement that he notify the Leave Coordination Department. However, it also held that the content of the notice was sufficient to apprise Honda of his request to take time off for a serious health condition and that notice to security should be deemed notice to Honda under the circumstances, particularly since Cavin's supervisor had actual notice.

In the case of Walton v. Ford Motor Co., 424 F.3d 481 (6th Cir. 2005), the Sixth Circuit held that the plaintiff's notice to security was not sufficient. In Walton, however, the facts were slightly different. Walton had injured his knee at work and left for a previously-scheduled doctor's appointment. While there, the doctor told him to stay off of work until he could be evaluated by an orthopedic surgeon. The next day, Walton called the security office and told him of this development, noting he would return to work in four days. He did not contact his supervisor or the labor relations department, or the medical department. After his second doctor's appointment, he again called security and told them he was ordered to stay off of work for the next four weeks. The defendant sent a "5-day quit letter" to Walton by certified mail that required him to follow certain instructions, including reporting any injury or illness to the Employment Office, or risk termination. Walton did not respond.

In rejecting Walton's claim, the Sixth Circuit noted the following. First, Walton had requested leave properly before, so he knew of the employer's requirements and had utilized the process appropriately. Second, security was not provided by the employer, but independent contractors, and the employer had explicitly prohibited its employees from requesting FMLA leave through security. Third, the plaintiff in Walton never explained the extent of his injuries. Finally, no one at the employer had actual notice that the plaintiff's knee injury was a serious

health condition. Based on the above, the Sixth Circuit concluded that the plaintiff had failed to give his *employer* appropriate notice under the FMLA.

In an unpublished decision regarding notice, the Sixth Circuit held in <u>Golevski v. Home Depot U.S.A., Inc.</u>, 143 Fed. Appx. 638, 2005 WL 1413099 (6th Cir. June 6, 2005), that Golevski had provided neither proper notice nor a qualifying reason for her absence. Although she had notified her supervisors by phone of her absence for "medical therapy" and had provided a doctor's excuse, she had been informed of Home Depot's policy that she file the appropriate leave of absence forms and medical certifications, which she did not do despite numerous requests. In holding that the plaintiff's notice was not sufficient, the Sixth Circuit noted that "unlike the plaintiff in *Cavin*, Golevski does not provide any explanation as to why she did not follow through with Home Depot's request that she complete the proper paperwork to obtain a medical leave of absence." <u>Id.</u> In distinguishing <u>Cavin</u>, the court noted that "the plaintiff in <u>Cavin</u> was seriously injured in an automobile accident and was physically unable to complete all of the required forms." <u>Id.</u> at n.3.

Factually, this case is right in between <u>Cavin</u> and <u>Golevski</u>. The plaintiff asserts that he called and told his dispatcher on Friday that he would be having gallbladder surgery on the following Monday. It seems to follow that someone having surgery will likely need some time off to recuperate.[2] The dispatcher then told the plaintiff that he needed to talk to Ms. Nible or

---

[2] Further, the Sixth Circuit in <u>Cavin</u> noted that "[i]f Honda lacked 'sufficient information about the employee's reason for taking leave, [it] should [have] inquire[d] further to ascertain whether the paid leave is potentially FMLA-qualifying.' . . . . Honda was on notice and had a duty to collect additional information from Cavin that would be necessary to make his leave comply with FMLA requirements." <u>Id.</u> at 726. The same can be said for the defendant in the present case upon hearing that the plaintiff needed gallbladder surgery.

Ms. Bergman to request extended leave, but the plaintiff failed to do so, without explanation, when he could have easily done so prior to the surgery. This would suggest that the plaintiff was not requesting any leave, but was simply reporting an absence. However, it appears from the record that Ms. Nible had actual notice of the plaintiff's absence and the fact that he was having gallbladder surgery, which makes this case closer to Cavin than Golevski. Given all of the above, the Court finds that "the information imparted to the employer [was] sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." Cavin, 346 F.3d at 723 (quoting Brohm v. JH Props., Inc., 149 F.3d 517, 523 (6th Cir. 1998)).

Reviewing the elements for an entitlement/interference claim, the final element – "the defendant denied the plaintiff FMLA benefits to which he was entitled" – is not in dispute in this case. Killian v. Yorozu Automotive Tn., Inc., 454 F.3d 549, 556 (6th Cir. 2006) ("[B]y termination Killian, Yorozu undoubtedly interfered with her rights under the FMLA."). It appears, then, that the only questions that remain for trial are whether the plaintiff is an "eligible employee" (which can be met if the plaintiff provides proof as outlined above) and, if so, the question of damages.

## II. RETALIATION/DISCRIMINATION CLAIM

In addition to her FMLA entitlement or interference claim under 29 U.S.C. § 2615(a)(1), the plaintiff also brings a claim of FMLA retaliation or discrimination under 29 U.S.C. § 2615(a)(2). See Killian v. Yorozu Automotive Tn., Inc., 454 F.3d 549, 556 (6th Cir. 2006) (discussing the "two distinct theories for recover under the FMLA"). In order to establish this claim, the plaintiff must prove the following:

> (1) [he] was engaged in an activity protected by the FMLA; (2) the employer knew that [he] was exercising [his] rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Arban v. West Publ'g Corp.,* 345 F.3d 390, 404 (6th Cir. 2003). [The plaintiff] bears the burden of demonstrating a causal connection. *Id.* [He] must show that the employer's stated reason for terminating [him] was pretextual and that the true reason for [his] dismissal was [his FMLA] leave. *Id.*

Id. at 556.  As noted above, the Court finds that notice was appropriate in the present case, so the second element is satisfied.  However, the question of causation is still open.

### A. The Parties' Arguments

Regarding causation, the plaintiff asserts that there is no question that his absence from work was the motivating factor in Ms. Nible's decision to terminate his employment. Ms. Nible admitted this when she testified that the plaintiff was terminated because he made himself unavailable for work and this was the only reason he was terminated. The defendant contends that given the plaintiff's failure to request any leave, his termination for failure to report for work was justified and, thus, the causation question is one for the jury.

### B. Discussion

"The employer's intent is not a relevant part of the entitlement inquiry under § 2615." Edgar v. JAC Prods., Inc., 443 F.3d 501, 507 (6th Cir. 2006).

> Under the retaliation theory (also known as the discrimination theory), in contrast, the employer's motive *is* an integral part of the analysis. *See Hodgens,* 144 F.3d at 160 (explaining that in retaliation cases, "the employer's motive is relevant, and the issue is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason"). The employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights. *See Kauffman v. Fed. Express Corp.,* 426 F.3d 880,

-14-

>885 (7th Cir. 2005) (observing that the retaliation theory applies where a company seeks to punish an employee "for exercising rights or opposing an unlawful procedure").

Id. at 508. In determining causation, the Court is to apply the familiar burden-shifting test articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 313-16 (6th Cir. 2001) (applying McDonnell Douglas test to FMLA retaliation claim). Under this framework, once the plaintiff makes out his *prima facie* case, then the burden shifts to the defendant to offer a legitimate, non-discriminatory rationale for termination of the plaintiff's employment.

The Court finds that the plaintiff has established a *prima facie* case. Specifically, the plaintiff has established that he notified the defendant of the need for leave for gallbladder surgery, Nible testified that she decided less than a week later that his employment would be terminated, and his termination was based on the fact that he had failed to report to work due to his surgery. There is no evidence of any performance problems before the plaintiff took FMLA leave.

The defendant argues that the plaintiff did not follow the company's internal procedures for the request of medical leave, so the plaintiff had not given sufficient information to the defendant to lead the defendant to believe that the plaintiff was requesting any leave. However, the Court has determined that, providing the employee-numerosity requirement is satisfied, the notice provided to the defendant *was* in fact sufficient under the FMLA to provide notice that the plaintiff was requesting leave for a serious health condition. There is no question in this case that the defendant terminated the plaintiff's employment solely because he did not appear for work due to his gallbladder surgery. Based on this, the Court finds that the defendant has failed to

come forth with a legitimate, non-discriminatory reason for the plaintiff's discharge. A genuine issue of material fact remains regarding the amount of damages the plaintiff may have sustained.

### III.   CONCLUSION

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1)   the plaintiff's construed motion for summary judgment [DE #45] is GRANTED IN PART and DENIED IN PART in accordance herewith; and

(2)   with respect to the employee-numerosity requirement, the plaintiff may tender a request for admission to the defendant no later than Tuesday, January 23, 2007, and the defendant must respond no later than Friday, January 26, 2007, or in the alternative the plaintiff may file other proof in the record no later than Wednesday, January 24, 2007.

This January 22, 2007.

Signed By:

*Karl S. Forester*   KSF

United States Senior Judge